IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

CYNTHIA JONES,
#119116,
    Petitioner,

vs.                                      Case No.:  1:15cv281/MMP/EMT

MARGUERITE MORGAN
and MIKE CARROLL,
    Respondents.
_____/

## ORDER and REPORT AND RECOMMENDATION

Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (ECF No. 1).  She also filed a motion to proceed in forma pauperis (ECF No. 2), which will be granted.

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that the petition should be dismissed without prejudice on the ground that the abstention doctrine set forth in Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971) applies.

I.    BACKGROUND

Petitioner was involuntarily committed to the custody of the Florida Department of Children and Family Services ("DCF") by an order of the Circuit Court in and for Alachua County, Florida (*see* ECF No. 1). She is currently housed at the Florida State Hospital (*see id.*). Although the background and procedural history of Petitioner's commitment is not included in her habeas petition, it is set forth in a Report and Recommendation issued by the undersigned in a habeas case previously filed by Petitioner in this court, Case No. 1:15cv33/WS/EMT. Petitioner was originally charged in the Alachua County Circuit Court, Case No. 01-2007-CF-1780, with one count of aggravated battery with a deadly weapon and one count of carrying a concealed weapon (electric weapon or device).[1]  *See* https://www.alachuaclerk.org (follow "Public Record, Court Records & Recording" hyperlink; then follow "Court Records" hyperlink; then follow "Begin your Court Records Search" hyperlink; then follow "Case/Name Information" hyperlink; then search Case Number 01-2007-CF-1780-A; then follow "01 2007 CR 001780 A" hyperlink). On August 30, 2007, the state court

---

[1] The court takes judicial notice of information available on the database maintained by the Alachua County Clerk of Court, viewed January 4, 2016. *See* Fed. R. Evid. 201; United States v. Berrojo, 628 F.3d 368, 369 (5th Cir. 1980) ("The doctrine of judicial notice permits a judge to consider a generally accepted or readily verified fact as proved without requiring evidence to establish it."); *see also* Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (district court permissibly looked to docket sheets in ruling on motion to dismiss because "docket sheets are public records of which the court could take judicial notice"); In re Salem, 465 F.3d 767, 771 (7th Cir. 2006) (taking judicial notice of state court dockets and opinions); Dawson v. Mahoney, 451 F.3d 550, 551 (9th Cir. 2006) (taking judicial notice of state court orders and proceedings); United States v. Mercado, 412 F.3d 243, 247–48 (1st Cir. 2005) (taking judicial notice of state court docket entries).

adjudicated Petitioner incompetent to proceed and committed her to the custody of DCF. *See id.* The state court found Petitioner competent to proceed on September 22, 2009. *See id.* Petitioner waived her right to a jury trial, and on October 9, 2009, the court adjudicated her not guilty by reason of insanity. *See id.* On October 13, 2009, the court ordered Petitioner committed to DCF.[2] *See id.* The court issued orders continuing Petitioner's involuntary commitment on May 3, 2010, April 6, 2011, April 11, 2012, September 21, 2012, March 22, 2013, and April 14, 2014. *See id.* On June 9, 2014, the court placed Petitioner on conditional release.[3] *See id.* On October 7,

---

[2] Florida Statutes § 916.106(7) provides that DCF "is responsible for the treatment of forensic clients who have been . . . acquitted of a felony by reason of insanity." Fla Stat. § 916.106(7). Section 916.15 sets forth the process for the commitment of a defendant acquitted of criminal charges by reason of insanity. *See* Fla. Stat. § 916.15(2), (3). Section 916.16 provides the trial court with continuing jurisdiction over an involuntarily committed defendant. *See* Fla. Stat. § 916.16.

[3] Florida Statutes § 916.17 provides that the committing court may order a conditional release of any defendant in lieu of an involuntary commitment to a facility based upon an approved plan for providing appropriate outpatient care and treatment. *See* Fla. Stat. § 916.17(1). In its order of conditional release the court must specify the conditions of release based upon the release plan and shall direct the appropriate agencies or persons to submit periodic reports to the court regarding the defendant's compliance with the conditions of the release and progress in treatment. *See* Fla. Stat. § 916.17(1).

Related and overlapping with the dictates of sections 916.15 through 916.17 are Rules 3.217 and 3.219 of the Florida Rules of Criminal Procedure. Rule 3.219 provides, in relevant part:

> If it appears at any time that the defendant has failed to comply with the conditions of release, or that the defendant's condition has deteriorated to the point that inpatient care is required, . . . the court, after hearing, may modify the release conditions or, if the court finds the defendant meets the statutory criteria for commitment, may order that the defendant be recommitted to the Department of Children and Family Services for further treatment.

2014, an affidavit of a forensic specialist was filed with the court, and the court appointed a public defender.[4] *See id.* Petitioner entered a plea of not guilty on October 9, 2014. *See id.* On October 16, 2014, the court appointed an expert to perform a "dangerousness" evaluation. *See id.* On January 22, 2015, the state court adjudicated Petitioner incompetent to proceed and recommitted her to the custody of DCF. *See id.* The court issued an order continuing Petitioner's involuntary commitment on July 27, 2015. *See id.* Another psychological evaluation was filed with the court on December 16, 2015. *See id.*

In the instant habeas petition, Petitioner challenges her continued commitment on the following grounds:

> I'm good work [sic] in my classes. I can arrange my own affairs without help. Willing to cooperate. I want to go back to my family in New York. Released on my own recognize [sic] and hire a bail bondsman. Drop charges, fine, reduced to a misdemeanor. The court set free [sic] without holding nothing [sic] over my head. Time served and to appear in state court. Victim charges and court costs. Filing document fees was [sic] refused by to be paid my [sic] fiduciary. My public defender didn't do a file on me. Cancel the Judge Denise Ferrero.

---

Fla. R. Crim. P. 3.219(b).

[4] In Petitioner's previous federal habeas petition, she alleged that her treatment provider accused her of failing to take her medication, resulting in a charge of violating her conditional release. *See* Case No. 1:15cv33/WS/EMT, Petition (N.D. Fla. Feb. 25, 2015).

Case No.: 1:15cv281/MMP/EMT

(ECF No. 1 at 2). Petitioner requests the following relief: (1) entry of an order authorizing her release form involuntary hospitalization, (2) issuance of a writ of habeas corpus commanding Respondent Morgan to bring her before the court for a hearing on her habeas petition, and (3) appointment of a public defender (*id.* at 2–3).

II.  ANALYSIS

This cause of action is subject to dismissal pursuant to the Younger abstention doctrine. This doctrine, announced in Younger v. Harris, 401 U.S. 37 (1971), reaffirmed the "strong federal policy against federal-court interference with pending state judicial proceedings." Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431, 102 S. Ct. 2515, 73 L. Ed. 2d 116 (1982). Abstention is not in order simply because a pending state-court proceeding involves the same subject matter. *See* New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 373, 109 S. Ct. 2506, 105 L. Ed .2d 298 (1989) ("[T]here is no doctrine that . . . pendency of state judicial proceedings excludes the federal courts."). The Supreme Court has recognized, however, certain instances in which the prospect of undue interference with state proceedings counsels against federal relief. *See id.* at 368.

Younger exemplifies one class of cases in which federal-court abstention is required: When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution. Although Younger itself involved

a parallel, pending state criminal proceeding, the Supreme Court has extended abstention to particular state civil proceedings that are akin to criminal prosecutions. The "pathmarking decision" applying <u>Younger</u> to bar federal relief in certain civil actions is <u>Huffman v. Pursue, Ltd.</u>, 420 U.S. 592, 95 S. Ct. 1200, 43 L. Ed. 2d 482 (1975). *See* <u>Sprint Commc'n, Inc. v. Jacobs</u>, — U.S. —, 134 S. Ct. 584, 588, 187 L. Ed. 2d 505 (2013). In <u>Huffman</u>, Ohio officials brought a civil action in state court to abate the showing of obscene movies in Pursue's theater. Because the State was a party and the proceeding was "in aid of and closely related to [the State's] criminal statutes," the Court held <u>Younger</u> abstention appropriate. 420 U.S. at 604.

In <u>New Orleans Pub. Serv., Inc.</u>, the Court had occasion to review and restate its <u>Younger</u> jurisprudence. 491 U.S. at 368. That case addressed and rejected an argument that a federal court should refuse to exercise jurisdiction to review a state council's ratemaking decision. "[O]nly exceptional circumstances," the Court reaffirmed, "justify a federal court's refusal to decide a case in deference to the States." *Id.* Those "exceptional circumstances" exist, the Court determined after surveying prior decisions, in three types of proceedings. First, <u>Younger</u> precluded federal intrusion into ongoing state criminal prosecutions. *See* <u>New Orleans Pub. Serv., Inc.</u>, 491 U.S. at 368. Second, certain "civil enforcement proceedings" warranted abstention. *Id.* (citing, *e.g.*, <u>Huffman</u>, 420 U.S. at 604); *see also* <u>Middlesex Cnty Ethics</u>

Comm., 457 U.S. at 433–34 (applying Younger to bar federal court from entertaining lawyer's challenge to a state ethics committee's pending investigation of the lawyer; state ethics committee's hearing was plainly "akin to a criminal proceeding" in that it was preceded by an investigation and formal complaint, an agency of the State initiated the hearing, and the hearing's purpose was to determine whether the lawyer should be disciplined for failing to meet the State's professional conduct standards).  Third, federal courts refrained from interfering with pending "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions."  New Orleans Pub. Serv., Inc., 491 U.S. at 368 (citing Juidice v. Vail, 430 U.S. 327, 336 n.12, 97 S. Ct. 1211, 51 L. Ed. 2d 376 (1977); Pennzoil Co. v. Texaco Inc., 481 U.S. 1, 13, 107 S. Ct. 1519, 95 L. Ed. 2d 1 (1987)).[5]  The Supreme

---

[5] In Juidice, plaintiffs, who were held in contempt by state court judges for disobeying subpoenas to appear in supplemental proceedings brought by judgment creditors in an attempt to collect a judgment, brought a class action seeking injunctive relief.  The Supreme Court held that a state's interest in the contempt process, through which it vindicates the regular operation of its judicial system, was of sufficiently great import to require application of the abstention doctrine. 430 U.S. at 335–36.

In Pennzoil Co., Pennzoil obtained a jury verdict of $10.53 billion in a state court suit alleging that Texaco tortiously induced a third oil company to breach a contract to sell its shares to Pennzoil. 481 U.S. at 4.  While the state civil action was pending, Texaco filed an action in federal district court alleging the state court proceedings violated its rights under the Constitution and various federal statutes.  Id. at 6.  Texaco asked the federal court to enjoin Pennzoil from taking any action to enforce the judgment, and the court entered a preliminary injunction doing so.  Id.  The Supreme Court held that there was little difference between the state interests present in Juidice (that is, the State's interest in forcing persons to respond to the court's process on pain of contempt) and the State's interest in forcing persons to transfer property in response to a court's judgment—both cases involved challenges to the processes by which the State compels compliance with the judgments of its courts.  Id. at 13–14.

Case No.:  1:15cv281/MMP/EMT

Court has not applied <u>Younger</u> outside these three "exceptional" categories, and in <u>Sprint Commuc'n, Inc.</u>, 134 S. Ct. at 588, the Supreme Court held that the three categories define <u>Younger</u>'s scope.

In the instant case, the proceedings in Petitioner's criminal case are ongoing; therefore, the instant case falls within the scope of <u>Younger</u>. Additionally, Petitioner has not shown that the conditional release revocation proceeding was brought to harass her or was otherwise motivated by bad faith, or that the criminal statutes under which she is being detained are "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it," *see* <u>Younger</u>, 401 U.S. at 53–54. Moreover, an adequate alternative state forum exists for Petitioner to raise her claims, namely, an appeal—or certiorari review—of any order recommitting her to the custody of the DCF. *See* <u>Nelson v. State</u>, 126 So. 3d 442, 443 (Fla. 4th DCA 2013); <u>Furqan v. State</u>, 91 So. 3d 913, 915 & n.1 (Fla. 2d DCA 2012).

For the aforementioned reasons, this court should abstain from assuming jurisdiction over Petitioner's claims.

---

The court concluded, "Not only would federal injunctions in such cases interfere with the execution of state judgments, but they would do so on grounds that challenge the very process by which those judgments were obtained. So long as those challenges relate to pending state proceedings, proper respect for the ability of state courts to resolve federal questions presented in state-court litigation mandates that the federal court stay its hand." *Id.* at 14.

Case No.: 1:15cv281/MMP/EMT

Accordingly, it is **ORDERED**:

Petitioner's motion to proceed in forma pauperis (ECF No. 2) is **GRANTED**.

And it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (ECF No. 1) be **DISMISSED** without prejudice on the ground that the abstention doctrine set forth in <u>Younger v. Harris</u>, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971) applies.

At Pensacola, Florida, this 5<u>th</u> day of January 2016.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**